# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| EVERETTE L. DAVIS | ) | |
| (Chapter 13 Case Number <u>15-40069</u>) | ) | Number <u>15-4020</u> |
| | ) | |
| *Debtors* | ) | |
| | ) | **FILED** |
| | ) | Lucinda B. Rauback, Clerk |
| | ) | United States Bankruptcy Court |
| EVERETTE L. DAVIS | ) | Savannah, Georgia |
| | ) | By lbarnard at 11:24 am, Sep 09, 2015 |
| *Debtor/Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPRINGLEAF FINANCIAL | ) | |
| SERVICES, INC. | ) | |
| and its subsidiaries and assigns, | ) | |
| | ) | |
| *Defendant* | ) | |

## OPINION AND ORDER ON DEBTOR'S MOTION FOR DEFAULT JUDGMENT

Everette L. Davis ("Debtor" or "Plaintiff") filed her Chapter 13 petition and proposed Plan of Reorganization on January 14, 2015. Dckt. Nos. 1, 4.[1] In the petition, Debtor listed among her assets her residence located at 2220 Mason Drive, Savannah, Georgia (the "Property"). Dckt. No. 1. On April 7, 2015, Debtor initiated this Adversary Proceeding by filing a Complaint to Determine Dischargeability, seeking to cancel the second

---

[1] For this Order, citations to the main bankruptcy case [15-45555] will appear as "Dckt. No. ___"; citations to Plaintiff's Adversary Proceeding [15-4555] will appear as "A.P. Dckt. No. ___".

mortgage lien on the Property. A.P. Dckt. No. 1. Springleaf Financial Services, Inc. ("Springleaf" or "Defendant") failed to answer Debtor's complaint. As a result, the Clerk entered default against Defendant as authorized by Bankruptcy Rule 7055 on June 3, 2015. A.P. Dckt. No. 6. Debtor filed this Motion for Default Judgment on June 10, 2015. A.P. Dckt. No. 8.

## FINDINGS OF FACT

Plaintiff's affidavit states that Defendant was properly served with the Summons and Complaint. A.P. Dckt. No. 5. After such service, Defendant failed to file any responsive pleadings. A defaulted defendant is deemed to have admitted the plaintiff's well-pleaded facts. *See* Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005). I find that the *facts* from Debtor's complaint are well-plead, and therefore they are deemed admitted by Defendant and quoted herein verbatim.

> 1. The Plaintiff filed Chapter 13 on January 14, 2015, and is subject to the jurisdiction of the Court.
> . . . .
> 3. The Plaintiff owns real property at 2220 Mason Drive, Savannah, GA 31404.
> 4. At the time of filing, the fair market value of the real property was approximately $62,000.00.
> 5. At the time of filing, the balance due to the first mortgage holder was approximately $73,085.61.
> 6. The Defendant has a claim against the Plaintiff for approximately $28,000.00, secured by a second mortgage against the real property described above.
> 7. There is no equity in the real property to secure the debt owed to the Defendant.
> . . . .

        9. The Plaintiff's Chapter 13 plan, which proposed to treat the Defendant as a wholly unsecured creditor, has been confirmed.

A.P. Dckt. No. 1.

## CONCLUSIONS OF LAW

11 U.S.C. § 1322(b)(2), often referred to as the anti-modification clause, states that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."

The Supreme Court in its seminal case interpreting section 1322(b)(2), read the exception broadly, focusing on the fact that what is prohibited is a modification of the lender's "rights," not merely the status of its claim. <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 328 (1993). There, the debtors attempted to "strip down" the lender's secured claim in their plan to the fair market value of the residence and treat the remaining portion of the bank's claim as unsecured pursuant to 11 U.S.C. § 506(a).[2] <u>Id.</u> at 326. The Court held that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," but even accepting the debtors'

---

[2] (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

valuation, "the bank is still the 'holder' of a 'secured claim,'" because the debtors' home retained some value as collateral. *Id.* at 328-29. Therefore, the bank's "rights" as the holder of a secured claim remained protected by § 1322(b)(2). *Id.* at 329. These "rights" the Court held, are determined by the relevant mortgage instruments which are enforced under state law and include "the right to retain the lien until the debt is paid off." *Id.*

The Eleventh Circuit interpreted Nobelman as protecting only a lender's secured claim in the debtor's residence if it retains some value as collateral and is not a wholly unsecured claim. Tanner v. FirstPlus Financial, Inc. (In re Tanner), 217 F.3d 1357 (11th Cir. 2000).[3] In reaching its conclusion, the court noted "to . . . extend the antimodification clause to even wholly unsecured claims would vitiate the Nobelman Court's pronouncement that '[debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.'" *Id.* at 1360 (citation omitted)(alteration in the original).

Here, Debtor's property is valued at $62,000.00 with a balance due to the first mortgage holder of $73,085.61. Therefore, Springleaf's claim is wholly unsecured and the lien may be "stripped off" under Eleventh Circuit's (and all the circuits that have ruled

---

[3] *See also* Minnesota Housing Fin. Agency v. Schmidt (In re Schmidt), 765 F.3d 877 (8th Cir. 2014); Branigan v. Davis (In re Davis), 716 F.3d 331 (4th Cir. 2013); Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002); Lane v. W. Interstate Bancorp (In re Lane), 280 F.3d 663 (6th Cir. 2002); Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122 (2d Cir. 2001); Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277 (5th Cir. 2000); McDonald v. Master Fin. (In re McDonald), 205 F.3d 606 (3d Cir. 2000); Griffey v. U.S. Bank (In re Griffey), 335 B.R. 166 (10th Cir. BAP 2005); In re Mann, 249 B.R. 831, 836 (1st Cir. BAP 2000).

on this issue) interpretation of § 1322(b)(2) and the Nobelman decision.[4] Tanner, 217 F.3d at 1360.

## ORDER

For these reasons, it is ORDERED that: Plaintiff's Motion for Default Judgment as to Defendant is GRANTED. It is further ORDERED that the mortgage lien on the Property held by Defendant, which is recorded in Deed Book 318 B, Page 001 in the Superior Court of Chatham County, Georgia, is deemed void with respect to the interest of the Debtor in the Property and shall be extinguished automatically, without further court order, upon entry of the Chapter 13 discharge in this case. Additionally, Plaintiff may record this judgment in the appropriate real estate records indexing system upon the entry of the discharge in this case.

---

[4] In a prior decision, I expressed my agreement with the distinct minority view that existed before the circuit court decisions mentioned *supra* in Footnote 3. In re Smith, 514 B.R. 331, 335 n. 6 (Bankr. S.D. Ga. 2014)(Davis, J.). The minority view basically held that when analyzing a "stripoff" situation in Chapter 13, a court should look first to whether the creditor holds a mortgage secured only by the debtor's principal residence. If so, the creditor's rights under § 1322(b)(2) may not be modified regardless of the presence or absence of underlying equity in the residence. Indeed, a later panel of the Eleventh Circuit also agreed with the minority but, like this Court in Smith, ultimately held that it was bound to follow the Tanner decision of its prior panel. American Gen. Fin., Inc. v. Dickerson (In re Dickerson), 222 F.3d 924, 926 (11th Cir. 2000).
    The Supreme Court recently issued a decision that could conceivably resurrect the minority view. Although arising in a Chapter 7 case which required interpretation of § 506(d) rather than § 1322(b)(2), the Supreme Court used similar reasoning to that of the minority view mentioned *supra* in holding that a wholly unsecured lien in Chapter 7 cannot be "stripped off." Bank of America, N.A. v. Caulkett, 2015 WL 2464049 (U.S. June 1, 2015). Specifically the Court noted: "'secured claim' in § 506(d) [] mean[s] a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim." *Id.* at 3. Like the Dickerson Court, the Supreme Court also had reservations about a statutory interpretation that placed significant emphasis on judicial valuations. *Id.* at *5. The Court observed that a reading allowing only creditors holding a lien with at least $1 of equity based on a judicial valuation to retain their lien through the bankruptcy could lead to arbitrary results. *Id.*
    I agree with the Court's reasoning in Caulkett, and believe it is conceivable that the same reasoning might apply in interpreting the phrase "claim secured only by a security interest in real property that is the debtor's principal residence..." which appears in § 1322(b). This may well lead to a reexamination the precedential authority of Tanner and the other circuit court opinions that have addressed this issue.
    Nevertheless, Debtor filed an affidavit stating that Defendant had been properly served with the Summons, Complaint, and Rule 26(f) report, yet Springleaf failed to file a motion, answer, or any other responsive pleading within the time period set forth in the Summons. The Motion for Default Judgment has been pending since June 10, 2015, and no opposition has been filed nor has there been a motion to set aside the prior entry of default. Therefore, under current authority, default judgment is proper, and adjudication on the question posed above will have to wait, if ever, for another day.

In the event that this case is dismissed, the lien of Springleaf shall not be affected by this Order. *See* 11 U.S.C. § 349(b)(1)(C). In the event that this case is converted to a Chapter 7 case, the rights of Springleaf with regard to its lien shall be governed by the applicable provisions of the Bankruptcy Code at that time.



_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 9th day of September, 2015.